T.C. Memo. 2019-26

UNITED STATES TAX COURT

ALLEN R. DAVISON III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15509-12L.                    Filed April 3, 2019.

<u>Allen Reed Davison II</u>, for petitioner.

<u>Ardney J. Boland III</u> and <u>Emile L. Hebert III</u>, for respondent.

MEMORANDUM OPINION

ASHFORD, <u>Judge</u>:  Petitioner commenced this collection due process

(CDP) case pursuant to section 6330(d)(1)[1] in response to a determination by the

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  Some monetary amounts are rounded to

(continued...)

[*2] Internal Revenue Service (IRS) Office of Appeals (Appeals) approving a notice of intent to levy (levy notice) with respect to petitioner's outstanding liability for income tax and an accuracy-related penalty under section 6662(a) (as well as interest) for the 2005 taxable year. This liability was attributable solely to certain computational adjustments[2] resulting from notices of final partnership administrative adjustment (FPAAs) issued as to two partnerships in which petitioner held interests (through another partnership). The issues before the Court are whether (1) petitioner may challenge his entire underlying tax liability in this proceeding and (2) Appeals abused its discretion in sustaining the levy notice.

## Background

The parties submitted this case to the Court for decision without trial under Rule 122. The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits. Petitioner resided in Louisiana when the petition was filed with the Court.

---

[1](...continued)
the nearest dollar.

[2]Sec. 6231(a)(6) defines the term "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments."

**[*3]** During 2005 petitioner was a partner in Six-D Partnership, LLP (Six-D),[3] holding a 24% partnership interest. Six-D was an entity subject to TEFRA. During 2005 Six-D was a partner in Cedar Valley Bird Co., LLP (Cedar Valley). Six-D was also a partner in TARD Properties, LLC (TARD Properties), but, as discussed below, claimed to transfer all of its interests in TARD Properties to T.A.R.D. Business Trust (TARD Trust) on January 1, 2005. Cedar Valley and TARD Properties were also entities subject to TEFRA.

Each TEFRA entity filed Form 1065, U.S. Return of Partnership Income, for 2005. TARD Properties later amended its 2005 Form 1065 and included Form 8308, Report of a Sale or Exchange of Certain Partnership Interests, reporting that Six-D had transferred all of its interests in TARD Properties to TARD Trust on January 1, 2005.

For 2005 petitioner filed Form 1040, U.S. Individual Income Tax Return. On this form he reported a Federal income tax liability of $11,015 and Federal income tax withholding of $16,953. After crediting the withholding and assessing

[3]The parties inconsistently refer to this entity as either an LLC or an LLP. Regardless, this inconsistency does not affect the Court's decision because Six-D is a flowthrough entity subject to the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648, and it received computational adjustments from two entities in which it was a partner and a member, respectively.

[*4] the reported tax, the IRS issued petitioner a refund of $5,938 on November 20, 2006.

The IRS later audited the 2005 Forms 1065 of Cedar Valley and TARD Properties and made certain adjustments. The IRS concluded in pertinent part that the reported transfer to TARD Trust was a sham transaction and took a whipsaw position, treating both Six-D and TARD Trust as holders of an interest in TARD Properties. On October 4, 2010, the IRS issued an FPAA as to Cedar Valley for 2005 (Cedar Valley FPAA). On October 20, 2010, the IRS issued an FPAA as to TARD Properties for 2005 (TARD Properties FPAA). Petitioner did not avail himself of section 6226(a) and (b)[4] to challenge either FPAA in this Court, and the record does not reflect that a petition for readjustment was filed in any other Federal court.

The IRS adjusted petitioner's 2005 Federal income tax liability because of the computational adjustments allocated to Six-D (which then flowed through to petitioner) as a result of the defaulted[5] Cedar Valley FPAA and the defaulted

---

[4]Sec. 6226(a) and (b), as applicable here, has since been amended. This reference (and a later reference) refers to sec. 6226(a) and (b) before it was amended by the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, sec. 1101(c), 129 Stat. at 630-631.

[5]According to IRS guidance, when no petition for readjustment is filed

(continued...)

**[\*5]** TARD Properties FPAA.[6]  As relevant here, the IRS made the following assessments against petitioner:  (1) on May 23, 2011, an income tax assessment of $2,337 for the computational adjustments resulting from the defaulted Cedar Valley FPAA and (2) on July 25, 2011, an income tax assessment of $21,334 and a section 6662(a) accuracy-related penalty assessment of $4,267 for the computational adjustments resulting from the defaulted TARD Properties FPAA.

On January 2, 2012, the IRS sent petitioner a levy notice advising him that the IRS intended to levy to collect his 2005 outstanding liability which, through the date of the levy notice, totaled $34,418 and that he had a right to a hearing to appeal the proposed collection action.

In response to the levy notice petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request).  In his CDP hearing request petitioner did not indicate that he was

---

[5](...continued)
pursuant to sec. 6226(a) and (b) "the TEFRA case [i.e., the FPAA] is defaulted." Internal Revenue Manual pt. 8.19.1.6.6.8.2.3 (Dec. 1, 2006); see also Estate of Simon v. Commissioner, T.C. Memo. 2013-174, at *9.

[6]The record is silent as to why the IRS determined to allocate to Six-D the computational adjustments resulting from the defaulted TARD Properties FPAA other than that the parties stipulated that the IRS determined the reported transfer of Six-D's interest in TARD Properties to TARD Trust on January 1, 2005, was a sham transaction.

[*6] seeking any collection alternatives;[7] instead, as set forth in a document attached to his CDP hearing request, petitioner asserted that he was appealing the proposed collection action because the IRS was attempting to tax multiple taxpayers for the same liability and that another entity was actually the responsible taxpayer.[8] Petitioner did not dispute the IRS' computational assessment of the section 6662(a) accuracy-related penalty or raise any partner-level defenses to the penalty.

Petitioner's CDP hearing request was assigned to Settlement Officer Eva Holsey (SO Holsey). On May 2, 2012, SO Holsey held a telephone CDP hearing with petitioner and his attorney.[9] During the hearing his attorney attempted to contest the income tax assessment resulting from the defaulted TARD Properties

---

[7]Petitioner did indicate on his CDP hearing request that he was seeking lien discharge and lien withdrawal. However, the record does not reflect that the IRS ever filed a notice of Federal tax lien with respect to his 2005 outstanding liability.

[8]Petitioner also asserted in this document that the pendency of the Tax Court cases involving Cedar Valley (docket Nos. 29379-07 and 26788-06) precluded the IRS from determining the flowthrough income to petitioner. That TEFRA proceeding was disposed of in Cedar Valley Bird Co., LLP v. Commissioner, T.C. Memo. 2013-153. Although the case was still pending at the time petitioner filed his CDP hearing request, that proceeding involved taxable years 2002, 2003, and 2004, not the year at issue (2005) in this case.

[9]Petitioner's attorney was his father (who also serves as his counsel of record here).

**[\*7]** FPAA; he claimed that the TARD Trust transfer transaction was settled with the IRS and that TARD Trust, not petitioner, was the taxpayer responsible for the resulting income tax assessed. SO Holsey informed them that on the basis of her review of the IRS transcripts, petitioner was precluded at the hearing from contesting the liability attributable to the computational adjustments resulting from the defaulted TARD Properties FPAA because he had a prior opportunity to do so. Petitioner did not propose a collection alternative at the hearing, nor does the record reflect that he attempted to dispute the section 6662(a) accuracy-related penalty assessment or raise partner-level defenses to the penalty at the hearing.

Consequently, SO Holsey determined that the proposed levy should be sustained, and on May 15, 2012, Appeals sent petitioner a notice of determination to that effect. Petitioner timely petitioned this Court for review of the notice of determination, raising issues pertaining to both his liability for income tax and his liability for the section 6662(a) accuracy-related penalty for 2005.

Discussion

I.    <u>Petitioner's Motions for Judgment on the Pleadings and to Shift the Burden of Proof</u>

As a preliminary matter we address petitioner's motion for judgment on the pleadings pursuant to Rule 120(a) and motion to shift the burden of proof pursuant

**[\*8]** to section 7491(a), both of which he filed after the Court granted the parties'
motion to submit this case to the Court for decision without trial under Rule 122
and on the same day he filed his opening brief.

A.      Motion for Judgment on the Pleadings

Rule 120(a) provides in pertinent part that "[a]fter the pleadings are closed
but within such time as not to delay the trial, any party may move for judgment on
the pleadings."  Such a judgment is based solely on the allegations and
information contained in the pleadings and not on any outside matters.  See Rule
120; see also Nis Family Tr. v. Commissioner, 115 T.C. 523, 537 (2000).

The pleadings in this case implicate two issues (see discussion infra pp. 10-
19):  (1) whether petitioner may challenge in this proceeding the computational
adjustments assessed against him for 2005 resulting from the defaulted Cedar
Valley FPAA and the defaulted TARD Properties FPAA and (2) whether Appeals
abused its discretion in sustaining the proposed levy.  Yet in his motion for
judgment on the pleadings petitioner requests that the Court "set aside" the
computational adjustments assessed against him as a result of the defaulted TARD
Properties FPAA.[10]  He also requests a refund of his Federal income tax

---

[10]In his motion petitioner states that he "is in agreement with the tax and
interest associated with the flow through of income from Cedar Valley" for 2005.

[*9] overpayments for 2011 and 2012 that the IRS offset against his outstanding liability for 2005 and an abatement of the section 6662(a) accuracy-related penalty for 2005 on the basis of reasonable cause. It is apparent that what petitioner is really seeking by his motion is equitable relief.[11] This cannot be addressed in a motion for judgment on the pleadings.[12] See Rule 120(a); Nis Family Tr. v. Commissioner, 115 T.C. at 537; cf. McGuire v. Commissioner, 149 T.C. 254, 262 (2017) (noting that the Tax Court is "not a court of equity, and we cannot ignore the law to achieve an equitable end") (and cases cited threat).

Accordingly, we will deny petitioner's motion for judgment on the pleadings.

B.    Shifting the Burden of Proof

Section 7491(a) provides generally that if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his Federal

---

[11]Indeed, according to petitioner, his motion "is based upon various principals [sic] of legal equity, judicial tax doctrines, and fair and just administration of the tax laws."

[12]We also question the efficacy of petitioner's motion from a procedural standpoint given that nearly two months before filing his motion he jointly moved with respondent to submit this case to the Court for decision without trial under Rule 122 on the basis of the pleadings and the facts recited in the parties' stipulation of facts that was filed concurrently with the Rule 122 motion, which the Court granted on that same day.

**[\*10]** income tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. See Rule 142(a)(2). In his motion to shift the burden of proof petitioner contends that he has provided sufficient evidence to shift the burden of proof to respondent. This Court has held that section 7491(a) applies only when the underlying tax liability is at issue in a CDP case. See, e.g., Oropeza v. Commissioner, T.C. Memo. 2008-94, slip op. at 10 n.3, aff'd, 402 F. App'x 221 (9th Cir. 2010); Kansky v. Commissioner, T.C. Memo. 2007-40, slip op. at 13-15. As discussed infra, petitioner is precluded from challenging his entire underlying tax liability for 2005 in this proceeding; consequently, section 7491(a) is inapplicable here, and the burden of proof is not shifted to respondent.

Accordingly, we will deny petitioner's motion to shift the burden of proof.

II.     Review of Proposed Collection Action

A.      CDP Review Procedure for a Proposed Levy

Under section 6331(a), if any person liable to pay any tax neglects or refuses to do so after notice and demand, the Commissioner is authorized to collect the unpaid amount by way of a levy upon all property and rights to property belonging to such person or upon which there is a lien. Pursuant to

[*11] section 6330(a), the Commissioner must provide the person with written notice of an opportunity for an administrative hearing to review the proposed levy.

If an administrative hearing is requested in a levy case, the hearing is to be conducted by Appeals.  Sec. 6330(b)(1).  At the hearing the Appeals officer conducting it must obtain verification that the requirements of applicable law and administrative procedure have been met.  Sec. 6330(c)(1).  The taxpayer may raise at the hearing any relevant issue including spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  The taxpayer may contest the existence or amount of the underlying liability at the hearing if the taxpayer did not receive a notice of deficiency with respect to the liability or did not otherwise have an earlier opportunity to dispute the liability.  See sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.; see also Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007); Shere v. Commissioner, T.C. Memo. 2008-8, slip op. at 10. Following the hearing, the Appeals officer must determine among other things whether the proposed collection action is appropriate.  In reaching the determination the Appeals officer must take into consideration:  (1) whether the requirements of applicable law and administrative procedure have been met, (2) all relevant issues raised by the taxpayer including offers of collection alternatives,

**[*12]** and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that collection be no more intrusive than necessary. Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

B.      Standard of Review

Section 6330(d)(1) grants this Court jurisdiction to review determinations made by Appeals in a levy case. Where the taxpayer's underlying tax liability is properly at issue, the Court reviews the liability determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews administrative determinations made by Appeals regarding nonliability issues for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000).

1.      Underlying Liability for Income Tax

Petitioner's complaint throughout the CDP administrative process was directed towards only the income tax assessments attributable to computational adjustments resulting from the defaulted Cedar Valley FPAA and the defaulted TARD Properties FPAA. He continues to do the same before this Court. However, the law is clear: If a taxpayer had an earlier opportunity to dispute his liability, he may not contest the liability in a CDP hearing (or thereafter in this Court). See sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. &

[*13] Admin. Regs.; see also Kuykendall v. Commissioner, 129 T.C. at 80; Goza v. Commissioner, 114 T.C. at 180-182; Shere v. Commissioner, slip op. at 10.

In Hudspath v. Commissioner, T.C. Memo. 2005-83, aff'd, 177 F. App'x 326 (4th Cir. 2006), we addressed whether a taxpayer may contest his underlying income tax liability in a CDP case to the extent that this liability was based on computational adjustments resulting from a TEFRA proceeding. The case involved only income tax assessments for the taxpayer's 1996 and 1997 taxable years that were attributable to computational adjustments resulting from two FPAAs. Those FPAAs had been the subject of a TEFRA proceeding that this Court ultimately dismissed for lack of jurisdiction. We held that pursuant to section 6330(c)(2)(B), the taxpayer was precluded from challenging the existence or amount of his 1996 and 1997 underlying income tax liabilities because he had had the opportunity, in the TEFRA proceeding, to challenge the partnership items that were reflected on the two FPAAs.

The instant case is indistinguishable from Hudspath. Pursuant to section 6226(a) and (b), within 90 days of the mailing of an FPAA a tax matters partner may file a petition with this Court or other referenced Federal court for readjustment of the partnership items; and if the tax matters partner fails to file such a petition, any notice partner may file a petition for readjustment within 60

[*14] days after the 90-day period has closed. Here, the parties stipulated that on October 4 and 20, 2010, the IRS issued the Cedar Valley FPAA and the TARD Properties FPAA, but no petition was ever filed pursuant to this statutory prescription challenging either FPAA. These defaulted FPAAs then became binding and conclusive upon petitioner, allowing the IRS to make the computational adjustments to income that petitioner desires to place in dispute. See sec. 6230(c)(4); Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 565-566 (1989). It is undisputed that petitioner's income tax liability for 2005 was attributable solely to the computational adjustments resulting from the defaulted Cedar Valley FPAA and the defaulted TARD Properties FPAA. Accordingly, petitioner's "earlier opportunity to dispute his liability" for income tax for 2005 was the opportunity to commence a TEFRA proceeding challenging the FPAAs upon their issuance.

In his reply brief petitioner contends that he was not notified of these FPAAs until after the statutory period for timely appealing the determinations had already passed. Under section 6223(a),[13] the Commissioner must give partners notice of the beginning of administrative proceedings and the final partnership

---

[13]Sec. 6223, as applicable here, has since been amended. This reference and later references to sec. 6223 refer to the section before it was amended by BBA sec. 1101(c), 129 Stat. at 627.

[*15] administrative adjustments resulting therefrom. However, petitioner was not a partner in either Cedar Valley or TARD Properties; rather, he held an indirect interest in these entities through his interest in Six-D, and petitioner does not argue nor does the record reflect that respondent was informed that petitioner was an indirect partner within the meaning of section 6223(c)(3). Under section 6223(h)(2), the tax matters partner of Six-D was required to forward copies of the Cedar Valley FPAA and the TARD Properties FPAA to petitioner. Furthermore, in any event, "[t]he failure of a tax matters partner, a pass-thru partner, the representative of a notice group, or any other representative of a partner to provide any notice or perform any act * * * [such as an appeal to an FPAA] does not affect the applicability of any proceeding or adjustment * * * to such partner." Sec. 6230(f); Kimball v. Commissioner, T.C. Memo. 2008-78, slip op. at 9. Because petitioner indirectly held interests in Cedar Valley and TARD Properties and section 6223(c)(3) is of no avail here, the IRS was not required to provide him individual notice of the FPAAs.

Therefore, we find that petitioner had a prior opportunity to challenge his liability for income tax attributable to the computational adjustments resulting from the defaulted TARD Properties FPAA (as well as the defaulted Cedar Valley FPAA) and is precluded from challenging this liability in this case.

**[\*16]**    2.    <u>Underlying Liability for Section 6662(a) Accuracy-Related Penalty</u>

In addition to assessing against petitioner income tax attributable to computational adjustments resulting from the defaulted Cedar Valley FPAA and the defaulted TARD Properties FPAA, the IRS assessed an accuracy-related penalty under section 6662(a) attributable to computational adjustments resulting from the defaulted TARD Properties FPAA.  Any penalty relating to an adjustment to a partnership item must be determined at the partnership level (and thus through a partnership-level proceeding) but partner-level defenses to such a penalty, i.e., whether the reasonable cause exception under section 6664(c) applies, can be asserted only through separate refund actions following assessment and payment. Sec. 301.6221-1(c), Proced. & Admin. Regs.; <u>see also</u> sec. 6230(c)(4).  In <u>McNeill v. Commissioner</u>, 148 T.C. 481, 487-488 (2017), we recognized that notwithstanding our lack of deficiency jurisdiction over such a penalty, since 2006 (when Congress expanded our jurisdiction to review <u>all</u> notices of determination issued pursuant to section 6330(c)(3)) we may to some extent review a CDP determination as to a taxpayer's liability for a penalty relating to an adjustment to a partnership item.

**[*17]** Nevertheless, it is well settled that our review of an Appeals determination under section 6330(c)(3) is limited to the issues that a taxpayer raises before Appeals. Thompson v. Commissioner, 140 T.C. 173, 178 (2013); Giamelli v. Commissioner, 129 T.C. 107, 114-115 (2007). An issue is not properly raised if the taxpayer either does not request consideration or requests consideration but fails to provide evidence on the issue at the CDP hearing after being given a reasonable opportunity to do so. Sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Ashmore v. Commissioner, T.C. Memo. 2017-233, at *17-*18.

The first time petitioner raised an issue with respect to the assessment for the section 6662(a) accuracy-related penalty, including asserting reasonable cause, was in his petition; he never brought this up whatsoever in his CDP hearing request or during his CDP hearing with SO Holsey. We find that he did not properly raise this issue below and therefore is precluded from challenging his liability for the penalty in this proceeding.

Having found that petitioner is precluded from challenging his entire underlying liability for 2005, we will review the determinations against him only as they relate to his administrative proceeding and under an abuse of discretion standard.

**[*18]** C.    <u>Analysis</u>

Under the abuse of discretion standard, the Court examines whether an Appeals determination was arbitrary, capricious, or without sound basis in fact or law.  See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Sego v. Commissioner</u>, 114 T.C. at 610; <u>Goza v. Commissioner</u>, 114 T.C. at 181-182.  We do not conduct an independent review or substitute our own judgment for that of the Appeals officer.  <u>Murphy v. Commissioner</u>, 125 T.C. at 320.

The record establishes that SO Holsey verified that all legal and procedural requirements had been met, <u>see</u> <u>CreditGuard of Am., Inc. v. Commissioner</u>, 149 T.C. 370, 379 (2017), and determined that the proposed levy appropriately balances the need for the efficient collection of taxes with petitioner's legitimate concern that the action be no more intrusive than necessary.  Petitioner failed to propose any collection alternatives before or during his CDP hearing.  It is not an abuse of discretion for an Appeals officer to sustain a collection action and not consider collection alternatives when the taxpayer has proposed none.  See <u>McLaine v. Commissioner</u>, 138 T.C. 228, 242-243 (2012); <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005); <u>see also</u> sec. 301.7122-1(d)(1), Proced. &

**[\*19]** Admin. Regs. (requiring that offers to compromise a tax liability must be made in writing and contain all the information prescribed or requested by the IRS).

We find that there was no abuse of discretion, and we sustain Appeals' determination.[14]

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

---

[14]Petitioner is of course free to continue to negotiate with the IRS concerning his outstanding liability for 2005, but he is entitled to only one CDP hearing and Tax Court proceeding with respect to the proposed levy. <u>See</u> <u>Perrin v. Commissioner</u>, T.C. Memo. 2012-22, slip op. at 8. Petitioner also may be entitled to seek a refund or abatement of the assessment of the sec. 6662(a) accuracy-related penalty by filing Form 843, Claim for Refund and Request for Abatement, on the grounds of reasonable cause.